IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JULIE ARDOIN,** <br><br> Plaintiff, <br> v. <br><br> **CCC ASSOCIATION, INC.,** <br> d/b/a CYPRESS COURT <br> CONDOMINIUM ASSOCIATION, <br><br> Defendant. | Civil Action No. 20-cv-01054 <br><br> Jury Trial Demanded |

## COMPLAINT

Plaintiff JULIE ARDOIN, through the undersigned counsel, brings this action against Defendant CCC ASSOCIATION, INC. d/b/a CYPRESS COURT CONDOMINIUM ASSOCIATION, and respectfully alleges as follows:

### NATURE OF ACTION

1. Beginning in 2006, Plaintiff permitted her son and tenant, Skylar Bergeron, to occupy her condominium unit, located at 2330 Edenborn Avenue, Unit 103, Metairie, Louisiana 70001 (the "Unit"). Skylar is schizophrenic.

2. Skylar lived in the Unit without a single fine for twelve years until Defendant learned of Skyler's schizophrenia.

3. Upon learning of his disability in or around early 2018, Defendant's property manager disclosed Skylar's disability to prospective tenants, neighbors, homeowner association members, and others without permission and in an unwarranted and discriminatory manner.

1

4. In response to Skylar's disability, Defendant installed a video camera pointed at the Unit's front door and adopted a zero-tolerance "Violation and Fining Policy" for violations to the condominium association's rules and regulations. Defendant then monitored Skylar's activities and threatened eviction and imposed fines against Plaintiff for Skylar's disability-related behavior that Defendant alleged constituted rule violations.

5. Defendant imposed fines against Plaintiff and the Unit in an inequitable, arbitrary, and discriminatory manner and interfered with Skylar's right to occupy the unit free from discrimination on the basis of his disability as well as Plaintiff's ownership of the Unit.

6. Defendant's actions were undertaken with the purpose and intent to forcibly evict or otherwise exert undue pressure on Plaintiff to remove Skylar from occupying the Unit because of Skylar's disability.

7. Defendant further denied reasonable accommodation requests necessary to afford Skylar an equal opportunity to use the dwelling.

8. Defendant's actions constitute unlawful housing discrimination in violation of the Fair Housing Amendments Act.

**PARTIES**

9. Plaintiff, Julie Ardoin, is a competent person of the full age of majority residing in Baldwin County, Alabama.

10. Plaintiff is the parent and landlord of Skylar Bergeron, a person with a "handicap," under 42 U.S.C. § 3602(h), residing in the Unit as Plaintiff's tenant. Plaintiff is associated with a person with a disability under 42 U.S.C. § 3604(f).

11. Defendant CCC Association, Inc. d/b/a Cypress Court Condominium Association ("Defendant") is a corporation organized and existing under the laws of the state of Louisiana with its principal place of business in Louisiana.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 3613(a)(1). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and the subject property is located in this judicial district.

## FACTUAL ALLEGATIONS

14. Cypress Court Condominiums consist of 84 condominium units created by Declaration Creating and Establishing Condominium Regime for Cypress Court Condominiums dated March 15, 1984.

15. Pursuant to the powers and authority granted in the Declaration, Defendant is the governing body for all of the condominium unit owners and is responsible for the administration and operation of Cypress Court Condominiums. Defendant is a non-profit corporation, and its membership is comprised of all of the condominium unit owners.

16. Defendant is managed by the Board of Directors, consisting of five members.

17. At all times relevant to the Complaint, Defendant's property manager was Suzanne Rappold.

18. Plaintiff is owner of the Unit, located at 2330 Edenborn Avenue, Unit 103, Metairie, Louisiana 70001.

19. Skylar Bergeron is a 35-year-old man who has been diagnosed with schizophrenia, a mental impairment that substantially interferes with major life activities. He is an individual with a "handicap" as defined by the Fair Housing Amendments Act, 42 U.S.C. § 3602(h).

20. Skylar has resided in the Unit since 2006.

21. Between 2006 and 2018, Defendant did not impose any fines against the Unit and/or as a result of Skylar's actions or conduct.

22. Upon information and belief, in early 2018, Defendant first learned of Skylar's disability.

23. Upon Defendant learning of Skylar's disability, Defendant's property manager, Ms. Rappold shared that he was disabled with existing and prospective tenants, existing and prospective employees, neighbors, and Board members without permission and in an unwarranted and discriminatory manner.

24. Since learning of Skylar's disability, Defendant has made a concerted effort to forcibly evict Plaintiff's tenant and otherwise coerce, interfere, or intimidate Plaintiff and her tenant in the enjoyment of their fair housing rights because of Skylar's disability.

25. On February 14, 2018, Defendant implemented a Violation and Fining Policy, including a Schedule of Fines.

26. The Schedule of Fines set forth the amount that would be charged for a first, second, and third-time violation of various rules and regulations. The Schedule of Fines also set forth various daily penalties for continuing, unremedied violations. Defendant's Schedule of Fines did not contain a late payment penalty provision or otherwise provide a basis for imposing late-payment penalties.

27.     Upon information and belief, the Policy and Schedule were specifically implemented to allow Defendant to assess Plaintiff with fines and to ultimately coerce Plaintiff to evict Skylar because of his disability.

28.     On April 19, 2018, Defendant through its Board of Directors sent Plaintiff a letter listing a number of alleged violations by Plaintiff's tenant and further stating that "should any additional violations of the Condominiums Declarations and/or Rules and Regulations be committed by your tenant, Skylar Bergeron, a request will be issued to immediately evict your tenant from the property permanently."

29.     When Plaintiff did not evict her tenant in response to the April 19, 2018 letter, Defendant repeatedly imposed fines on Plaintiff related to Skylar's tenancy in order to coerce Plaintiff into evicting Skylar because of his disability.

30.     On or about May 25, 2018, Defendant installed a video camera trained at the door of Plaintiff's Unit.

31.     Other than this camera, Defendant did not install any other camera directed at the door of a unit in the complex.

32.     On August 3, 2018, Defendant issued the first notice of fine in the amount of $50.00.

33.     The notice stated that the fine was being imposed because Skylar allegedly discarded clothing by placing it on the side of, rather than within, the dumpster.

34.     Video evidence did not show Skylar placing clothing beside the dumpster.

35.     In an email attached to the notice, Ms. Rappold stated that the Association's Schedule of Fines constituted a "zero tolerance" policy for violations.

36. Defendant imposed non-payment penalties, contrary to the Policy and Schedule, which do not provide for such penalties. As of March 6, 2020, the amount of the first fine, including non-payment penalties, is $1000.

37. On September 5, 2018, Defendant issued a second notice of fine in the amount of $50.00. The notice stated that the fine was due to tenant conduct on August 28, 2018 that allegedly "interfered with the peace and comforts of fellow residents."

38. Notice of the fine was accompanied by a video clip.

39. The video evidence did not show disruptive behavior.

40. As of March 6, 2020, the amount of the second fine, including non-payment penalties, is $950.

41. Two days later after the second notice of fine, on September 7, 2018, Defendant issued a third notice of fine in the amount of $100.00. The notice stated that Plaintiff's tenant's actions "has [sic] created a fearful environment for our employees and has [sic] created a disturbance within the complex."

42. A September 7, 2018 email transmitting notice of the fine stated: "In keeping with the schedule of fines that was adopted by the Board of Directors and sent to you in February 2018, the fine has increased to $100.00."

43. As of March 6, 2020, the amount of the third fine, including non-payment penalties, is $1,900.

44. On September 9, 2018, two days after the third fine, Defendant issued a fourth notice of fine in the amount of $200.00. The email transmitting the notice stated that the fine was for "vandalism of Association property."

45. The "vandalism" alleged was that Plaintiff turned the camera trained on her Unit to face elsewhere and attempted to cover it. Plaintiff had requested that the camera be removed because its focus on her Unit door, which Skylar was able to observe, exacerbated symptoms associated with his schizophrenia. Plaintiff had made Defendant aware of the camera's effect of worsening Skylar's impairment, but Defendant refused to reposition the camera so it no longer pointed at Plaintiff's door.

46. According to the schedule of fines, the applicable fine was $100.00. However, Plaintiff was fined $200.00.

47. As of March 6, 2020, the amount of the fourth fine, including non-payment penalties, is $3,800.

48. On September 18, 2018, Defendant issued a fifth notice of fine in the amount of $100.00. The notice stated that the fine was due to the "Association President receiv[ing] a call from a resident that Skylar was slamming his door and disturbing the peace."

49. As of March 6, 2020, the amount of the fifth fine, including non-payment penalties, is $1,900.

50. On November 12, 2018, Defendant issued a sixth notice of fine in the amount of $300.00. The notice stated that the fine was related to "disturbing the peace."

51. As of March 6, 2020, the amount of the sixth fine, including non-payment penalties, is $5,100.

52. On January 4, 2019, Defendant issued a seventh notice of fine in the amount of $300.00. The notice stated that the fine related to a lit cigarette being thrown in the pool by Skylar.

53. As of March 6, 2020, the amount of the seventh fine, including non-payment penalties, is $4,200.

54. The current amount of the seven fines collectively is $18,850.

55. On December 26, 2019, Defendant issued a statement reflecting the seven above-referenced invoices as well as, for the first time, "Legal Fees" totally $4,158.15. The total amount listed in the March 2020 Statement is $23,008.15.

56. Additionally, on November 15, 2018, counsel for Defendant sent Plaintiff a debt collection letter stating that if the amounts due were not paid, Defendant would seek to seize and sell Plaintiff's interest in the Unit. The letter was accompanied by an affidavit from Suzanne Rappold.

57. On December 4, 2018, an attorney for Plaintiff responded to the November 15, 2018 letter identifying defects in Ms. Rappold's affidavit, objecting to the imposition of the underlying fines, questioning the evidence supporting the imposed fines, and stating that Defendant's efforts were in bad faith and with the sole purpose of forcibly evicting Plaintiff's tenant because of his disability.

58. In a letter dated February 8, 2019, Plaintiff, via counsel, requested that reasonable accommodations be made by Defendant in light of an identifiable nexus between the requested accommodations and Plaintiff's tenant's disability.

59. The first request was to reverse all fines to date and cease the imposition of any future fines because the fines related to Skylar's disability.

60. The second request was to provide Skylar, because of his disability, with a separate entry and exit to reduce his need to utilize the common area to enter and exit the grounds as well as his interaction with other residents.

61. The third request was a relocation of the security camera pointed directly at the Unit's door to accommodate Skylar's disability because the camera's pointing directly at his front door exacerbated the symptoms of his schizophrenia.

62. Plaintiff never received a response to her February 8, 2019 letter. The request for reasonable accommodations was either not considered, denied, or otherwise not acted upon by Defendant.

63. Defendant's placement of a camera, Defendant's imposition of fines for conduct related to Skylar's disability, and Defendants' attempt to coerce Plaintiff into evicting Skylar based on conduct related to his disability was motivated by discriminatory animus against individuals with mental disabilities.

64. Defendant's actions alleged above were undertaken in callous and reckless disregard to the fair housing rights of people with disabilities.

65. As a condominium association acting as the governing body of the Cypress Court Condominiums, Defendant had a duty to adequately train and supervise its employees, including its property manager, with respect to: tenants with disabilities, acting in compliance with housing discrimination laws, providing reasonable accommodations to tenants with disabilities, nondiscriminatory enforcement of rules and against unit owners, nondiscriminatory imposition of fines against unit owners, and legal nondiscriminatory bases for forcible eviction.

66. Upon information and belief, Defendant failed to adequately train and/or supervise its property manager with respect to Plaintiff's tenant's disability, housing discrimination, proper compliance with the Fair Housing Amendments Act, the requirement to provide reasonable accommodations for Plaintiff's tenant's disability, and the unlawful imposition of fines relating to a tenant's disability.

## FIRST CAUSE OF ACTION
### (Disparate Treatment–Discrimination in Terms, Conditions, or Privileges in Violation of 42 U.S.C. § 3604(f)(2))

67. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

68. Defendant had actual knowledge of Plaintiff's tenant's disability.

69. Defendant imposed fines and other terms and conditions, including surveillance of the Unit, upon Plaintiff because of the disability of her tenant.

70. Defendant treated Plaintiff's tenant differently because of his disability and did not want him residing in the Unit.

71. Defendant threatened Plaintiff with the eviction of Plaintiff's tenant based upon Plaintiff's tenant's disability.

72. Defendant has imposed fines in a discriminatory manner because of Plaintiff's tenant's disability.

73. Additionally, Defendant's Property Manager, Suzanne Rappold, has specifically targeted Plaintiff's tenant in a discriminatory manner because of his disability.

74. Plaintiff requests that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations of the laws of the United States, injunctive relief, an award of compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

## SECOND CAUSE OF ACTION
### (Failure to Reasonably Accommodate in Violation of 42 U.S.C. § 3604(f)(3))

75. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

76. Defendant was personally involved in and/or had authorized and/or ratified each and every discriminatory act and denial of accommodation for Plaintiff and Plaintiff's tenant herein.

77. At all times material, Defendant and Defendant's property manager, Suzanne Rappold, had actual knowledge that Plaintiff's tenant has a disability.

78. Plaintiff requested reasonable accommodations in Defendant's rules, policies, practices, and/or services.

79. The requested accommodations were necessary to afford Plaintiff's tenant equal opportunity to use and enjoy the Unit.

80. The requested accommodations would not have imposed an undue financial or administrative burden or cause a fundamental alteration of Defendant's operation.

81. Defendant did not grant Plaintiff's requests or engage in an interactive process to determine whether any reasonable accommodation could have been made to Plaintiff's tenant.

82. Defendant's failure to modify its existing policies and practices to accommodate the disability of Plaintiff's tenant is discriminatory and unlawful.

83. Plaintiff requests that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations of the laws of the United States, injunctive relief, an award of compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

### THIRD CAUSE OF ACTION
**(Interference, coercion, or intimidation in violation of 42 U.S.C. § 3617)**

84. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

85. By the above actions, including the surveillance of Plaintiff unit and the imposition of fines against Plaintiff because of Plaintiff's tenant's disability, Defendants have unlawfully coerced, intimidated, threatened or interfered with Plaintiff in the exercise or enjoyment of her rights granted or protected by the Fair Housing Amendments Act on the basis of Plaintiff's tenant's disability, in violation of the Fair Housing Amendments Act and implementing regulations, 24 C.F.R. § 100.400.

86. Defendant also utilized the imposition of fines to attempt to forcibly evict Plaintiff's tenant based solely on his ability.

87. These actions on the part of Defendant constituted unlawful interference, coercion, or intimidation in violation of 42 U.S.C. § 3617.

## FOURTH CAUSE OF ACTION
**(Negligent training and supervision in violation of Louisiana state law)**

88. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

89. Upon information and belief, Defendant failed to adequately train and/or supervise its employees, including the property manager, with respect to: Plaintiff's tenant's disability, the improper disclosure of a tenant's disability, housing discrimination, proper compliance with the Fair Housing Amendments Act, the unlawful nature of attempting to forcibly evict a tenant based on his disability, the unlawful imposition of fines relating solely to a tenant's disability, and the requirement to provide reasonable accommodations for Plaintiff's tenant's disability.

90. As a result of its status as a condominium association, which acts as the governing body of the Cypress Court Condominiums, Defendant had a duty to properly train and supervise its employees with respect to actions that could constitute housing discrimination in violation of the Fair Housing Amendments Act.

91. By failing to properly train and supervise its employees with respect to housing discrimination, Defendant breached that duty.

92. Defendant's breach of its duty to train and supervise its employees with respect to housing discrimination resulted in damage to Plaintiff.

93. Plaintiff has suffered damages as a result of Defendant's failure to adequately train and supervise its employees.

## DEMAND FOR JURY

94. Plaintiff hereby demands a trial by jury for all issues in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations of the laws of the United States and Louisiana; injunctive relief enjoining Defendant from (1) collecting the assessed fines; (2) assessing any future fines based solely on Plaintiff's tenant's disability, (3) discriminating on the basis of disability in violation of the Fair Housing Amendments Act and requiring Defendant to: (1) accommodate Plaintiff's tenants disability by pointing the security camera away from Plaintiff's unit, (2) implement non-discrimination policies, including policies with respect to physical and mental disabilities of owners and tenants and procedures for granting reasonable accommodation, (3) undertake comprehensive fair housing training, and (4) provide adequate training and supervision of its employees with respect to compliance with housing discrimination laws; compensatory and punitive damages; attorney's fees; expenses; and costs; and all other and further relief as appears to this Court necessary and proper.

Dated: March 30, 2020 | Respectfully Submitted,

**IAS LAW LLC**

By: s/Imtiaz A. Siddiqui
Imtiaz A. Siddiqui
La. Bar Roll No. 35321
900 Camp Street
Suite 435
New Orleans, Louisiana 70130
Telephone: (504) 500-1876
Facsimile: (504) 814-1760
Email: ias@iaslawllc.com

s/Elizabeth J. Owen
Elizabeth J. Owen
La. Bar Roll No. 33621
Louisiana Fair Housing Action Center
1340 Poydras Street, Suite 710
New Orleans, LA 70112
Telephone: (504) 708-5291
Facsimile: (504) 684-5687
Email: eowen@lafairhousing.org

***Attorneys for Plaintiff***